## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **RODNEY LYNN TERRY,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | |
| **SOCIAL SECURITY** ) | **Case No.: 5:24-cv-1151-AMM** |
| **ADMINISTRATION,** ) | |
| **COMMISSIONER,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Rodney Lynn Terry brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("benefits") and supplemental security income. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

## I.    Introduction

On January 31, 2022, Mr. Terry protectively filed an application for benefits under Title II of the Act, alleging disability as of January 28, 2022. R. 26, 119–26, 275–76. Also on January 31, 2022, Mr. Terry filed an application for supplemental security income under Title XVI of the Act, alleging disability as of January 28,

2022. R. 26, 127–34, 277–81. Mr. Terry alleges disability due to hip replacement, blood clots, and obesity. R. 119, 127. He has a limited education and has past relevant work experience as a press tender, material handler, and general inspector. R. 35.

The Social Security Administration ("SSA") initially denied Mr. Terry's applications on July 8, 2022, and again denied them upon reconsideration. R. 26, 117–58. On April 24, 2023, Mr. Terry filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 26, 195–96. That request was granted. R. 227–29, 249–54. Mr. Terry appeared and testified at a hearing before ALJ Gary Suttles on August 23, 2023. R. 26, 57–99. On November 14, 2023, ALJ Suttles issued a partially favorable decision. R. 23–40. *First*, ALJ Suttles found that Mr. Terry was disabled from January 28, 2022 through April 1, 2023. R.27. *Second*, ALJ Suttles found that Mr. Terry's "disability ended on April 2, 2023" when "medical improvement occurred." R. 27.

Mr. Terry appealed to the Appeals Council, which denied his request for review on June 21, 2024. R. 9–12. After the Appeals Council denied Mr. Terry's request for review, R. 9–12, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On August 21, 2024, Mr. Terry sought this court's review of the ALJ's decision. *See* Doc. 1.

## II.    The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. §§ 404.1520, 416.920. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. *Id*. *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If such criteria are met, the claimant is declared disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional

3

capacity, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c), 416.920(g)(1), 416.960(c).

Where, as here, the ALJ determines whether the claimant continues to be disabled beyond a particular date, the ALJ follows an eight-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is engaging in substantial gainful activity; (2) if not, whether the claimant has an impairment or combination of impairments that meet or equal a listed impairment; (3) if not, whether there has been medical

improvement; (4) if so, whether the improvement is related to the claimant's ability to work; (5) if there is no medical improvement or if medical improvement is not related to the claimant's ability to work, whether an exception to medical improvement applies; (6) if there is medical improvement related to the claimant's ability to work or if an exception applies, whether the claimant has a severe impairment; (7) if so, whether the claimant can perform his past relevant work; and (8) if not, whether the claimant can perform other work.

*Klaes v. Comm'r Soc. Sec.*, 499 F. App'x 895, 896 (11th Cir. 2012) (citing 20 C.F.R. § 404.1594(f)(1)–(8)); *see also* 20 C.F.R. § 416.994(b)(5)(i)–(viii) (describing same process as 20 C.F.R. § 404.1594(f)(1)–(8) with the exception of the first step regarding substantial gainful activity).

The ALJ determined that Mr. Terry met the insured status requirements of the Act through December 31, 2023. R. 27, 30. Next, the ALJ found that Mr. Terry had not engaged in substantial gainful activity since his alleged onset date. R. 30. The ALJ decided that Mr. Terry had the following severe impairments "[f]rom January 28, 2022 through April 1, 2023, the period during which [he] was under a disability": bilateral major hip joint dysfunction, osteoarthritis, and peripheral vascular disease. R. 31. The ALJ found that Mr. Terry's history of right mandibular fracture, heart arrhythmia/bradycardia, rotator cuff and status-post left ulnar fracture, hypertension, left knee sprain, anxiety, depression, and history of alcohol use disorder were "non-severe impairments." R. 31. Overall, the ALJ determined that from January 28, 2022 through April 1, 2023, Mr. Terry did not have "a severe impairment or combination

of severe impairments that met or medically equaled the severity" of the listed impairments to support a finding of disability. R. 32.

The ALJ found that Mr. Terry's "medically determinable impairments could reasonably be expected to produce his alleged symptoms, and that his statements concerning the intensity, persistence and limiting effects of these symptoms are generally consistent with the evidence from January 28, 2022 through April 1, 2023." R. 33. The ALJ found that, from January 28, 2022 through April 1, 2023, Mr. Terry had the "residual functional capacity to perform sedentary work" with certain limitations. R. 33. The ALJ determined that Mr. Terry may: lift and/or carry up to ten pounds occasionally, and up to five pounds frequently; sit for six hours and stand or walk for two hours in an eight-hour workday, with customary breaks; occasionally balance, bend, stoop, and crouch. R. 33. The ALJ also determined that Mr. Terry must not: push or pull with his bilateral lower extremities; twist, squat, crawl, climb stairs or ladders, or run; be exposed to heights, dangerous machinery, or uneven surfaces; or sustain a forty-hour workweek. R. 33.

According to the ALJ, from January 28, 2022 through April 1, 2023 Mr. Terry was "unable to perform any of his past relevant work" as a press tender, material handler, or general inspector. R. 35. According to the ALJ, Mr. Terry is "a younger individual," and he has "a limited education," as those terms are defined by the regulations. R. 35. The ALJ determined that Mr. Terry's "acquired job skills do not

transfer to other occupations within his residual functional capacity." R. 35. The ALJ concluded that "[f]rom January 28, 2022 through April 1, 2023, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that he could have performed." R. 35.

The ALJ then evaluated whether Mr. Terry continued to be disabled after April 1, 2023. R. 36. As of November 14, 2023, the ALJ determined that Mr. Terry had the same severe impairments as those present from January 28, 2022 through April 1, 2023. R. 36. The ALJ found that beginning April 2, 2023, Mr. Terry "has not had an impairment or combination of impairments that meets or medically equals the severity" of one of the listed impairments. R. 36. The ALJ then found that Mr. Terry experienced a medical improvement as of April 2, 2023. R. 36. Next, the ALJ found that Mr. Terry's medical improvement was related to his ability to work because his residual functional capacity had increased. R. 36.

The ALJ found that Mr. Terry's "medically determinable impairments could reasonably be expected to produce his alleged symptoms," but that his "statements concerning the intensity, persistence and limiting effects of these symptoms after April 1, 202[3] are not entirely consistent with the medical evidence and other evidence in the record." R. 37. The ALJ found that, beginning April 2, 2023, Mr. Terry had the "residual functional capacity to perform light work" with certain

limitations. R. 36. The ALJ determined that Mr. Terry may: lift and/or carry up to twenty pounds occasionally, and up to ten pounds frequently; sit, stand, and walk for six hours each in an eight-hour workday; and occasionally balance, bend, stoop, crouch, and squat. R. 36–37. The ALJ also determined that Mr. Terry must not: push or pull with his bilateral lower extremities; twist, crawl, climb stairs or ladders, or run; or be exposed to vibrations, heights, or dangerous machinery. R. 36–37.

Despite the increased residual functional capacity, the ALJ found that Mr. Terry remained unable to perform any of his past relevant work. R. 39. Additionally, the ALJ noted that "[s]ince April 2, 2023, [Mr. Terry's] age category has changed to an individual closely approaching advanced age." R. 39. And "[b]eginning April 2, 2023, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Mr. Terry] is 'not disabled,' whether or not he has transferable job skills." R. 39. Based on the testimony of a vocational expert, the ALJ determined there are jobs that exist in significant numbers in the national economy that Mr. Terry can perform such as cashier, fast food worker, and small products assembler. R. 39–40.

Based on these findings, the ALJ concluded that Mr. Terry's "disability ended April 2, 2023, and he has not become disabled again since that date." R. 40. Mr. Terry now challenges that decision.

## III.    Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Walker v. Soc. Sec. Admin, Comm'r*, 987 F.3d 1333, 1338 (11th Cir. 2021); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. § 405(g). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision "is reasonable and supported by substantial evidence." *See Martin*, 894 F.2d at 1529 (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *Id*. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court

scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV.    Discussion

*First*, Mr. Terry alleges that the ALJ's decision should be reversed because the ALJ did not articulate sufficient reasoning to support his determination that Mr. Terry's impairments had medically improved. Doc. 11 at 1. *Second*, Mr. Terry alleges that the ALJ improperly evaluated the medical opinion of Dr. Don E. Beach, M.D. *Id.* at 1–2. *Third*, Mr. Terry argues that the ALJ's finding that Mr. Terry had the ability to perform work-related physical activities is not based on substantial evidence. *Id.* at 2.

### A. The ALJ's Finding of Medical Improvement

Medical improvement is a "decrease in the medical severity" of impairments that were present when the Commissioner last determined that the recipient was disabled or continued to be disabled; "[a] determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. § 404.1594(b)(1); 20 C.F.R. § 416.994(b)(1)(i); *see Freeman v. Heckler*, 739

F.2d 565, 566 (11th Cir. 1984); *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984).

The Eleventh Circuit has conclusively established that "the Commissioner must compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with new medical evidence." *Gombash v. Comm'r, Soc. Sec. Admin.*, 566 F. App'x 857, 859 (11th Cir. 2014) (citing *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985) ("[T]his court has held that a comparison of the original medical evidence and the new medical evidence is necessary to make a finding of improvement.")).

The comparison of "old" and "new" evidence must include more than "specifically refer[ing] to the original medical evidence." *Freeman*, 739 F.2d at 566. Instead, the ALJ must "actually compare the old and new evidence," without "treat[ing] the case as though it were an original application for benefits." *Id.* In other words, "[t]o terminate benefits, the Commissioner may not focus only on new evidence concerning disability, but must also evaluate the evidence upon which the claimant was originally found to be disabled." *Gombash*, 566 F. App'x at 859 (citing *Vaughn*, 727 F.2d at 1043). "Without a comparison of the old and new evidence, there can be no adequate finding of improvement." *Id.* (citing *Vaughn*, 727 F.2d at 1043).

The Commissioner is not required to hire an expert medical source when determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1513a(b)(2), 404.1517; *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (recognizing that the ALJ is not "obligated to seek independent, additional expert medical testimony" when the record is sufficient to support the ALJ's decision). Instead, "the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Id.* at 1423.

The ALJ issued a partially favorable decision in which he found that Mr. Terry was under a disability from January 28, 2022 through April 1, 2023. R. 27, 33–35. In making that finding, the ALJ considered the medical evidence of record during that time frame, specifically as it related to Mr. Terry's "bilaterial hip necrosis, severe left hip osteoarthritis and a femoral head fracture that resulted in an artery occlusion in his left leg." R. 34. The ALJ noted that Mr. Terry underwent surgery on his left hip, "postsurgical treatment for his left hip and leg problems," "an endovascular procedure," and "an aortic stent graft procedure." R. 34. The ALJ wrote:

> The evidence finally establishes the claimant was seen and treated for other reasons at the Beach Clinic on March 30, 2023 and that he did not complain of any hip or leg problems of any kind at that time. The claimant was noted

12

> to be well nourished, well-developed and in no acute distress that day, and no abnormal objective medical findings were noted on his physical examination as far as those areas were concerned then.
>
> In light of the above, I find the claimant was disabled because of his left hip and leg problems between his alleged onset date of January 28, 2022 and April 1, 2023.

R. 34 (internal citations omitted); *see also* R. 608–11.

The ALJ determined that "[m]edical improvement occurred as of April 2, 2023, the date the claimant's disability ended," and "[t]he medical improvement that has occurred is related to the claimant's ability to work because there has been an increase in his residual functional capacity." R. 36. In making this determination, the ALJ stated that "[i]n comparing the claimant's residual functional capacity for the period during which he was disabled with his residual functional capacity beginning April 2, 2023, I find that his functional capacity for basic work activities has increased for the reasons set forth in more detail below." R. 36.

In forming Mr. Terry's residual functional capacity beginning April 2, 2023, the ALJ specifically cited two visits to the Beach Clinic: May 12, 2023 and August 4, 2023. R. 37; *see also* R. 602–604, 733–36. The ALJ also stated that Mr. Terry "continued to undergo routine periodic medication management therapy for his hip and left leg problems at the Beach Clinic after [the May 12, 2023 visit] until August 4, 2023 and he continued to do well overall with the same according to the evidence

in the record." R. 37 (citing generally Exhibits B8F and B14F). The ALJ also cited Mr. Terry's hearing testimony and Adult Function Report. R. 38.

The ALJ concluded that "the objective medical evidence simply does not document the severe and disabling ongoing subjective symptoms [Mr. Terry] alleges he suffers from because of his physical problems since his disability ended on April 2, 2023." R. 38. "Instead," the ALJ reasoned the objective medical evidence "indicates [Mr. Terry's symptoms] are controlled to a great extent by [his] medications without adverse medicinal side effects." R. 38. The ALJ found that "the objective medical evidence and other evidence in the record establishes [Mr. Terry] has been capable of performing the limited range of light work . . . since" April 2, 2023. R. 39.

The medical evidence from the May 12, 2023 visit indicates that Mr. Terry presented to the Beach Clinic for fatigue. R. 602. He also reported "moderate anxiety over being unemployed." R. 602. The medical records note his "Past Medical History" included osteoarthritis and peripheral vascular disease and reflect that he was prescribed Percocet to be taken "every 4 hours as needed for pain, but do not take daily." R. 602. Mr. Terry denied joint pain and denied muscle pain and appeared "well-nourished, well developed, alert, in no acute distress." R. 603. Lab work was ordered, and Mr. Terry was to return to the clinic in two weeks. R. 604.

Mr. Terry presented to the Beach Clinic on June 23, 2023 for "[p]ain involving [his] face." R. 598. The medical records note that Mr. Terry was prescribed Percocet to be taken "every 4 hours as needed for pain, but do not take daily." R. 598. Mr. Terry appeared "well nourished, well developed, alert, oriented, in no acute distress." R. 599. He was to return to the clinic in six weeks. R. 601. These records are silent as to current hip pain or problems. *See* R. 598–601.

The medical evidence from the August 4, 2023 visit indicates that Mr. Terry presented to the Beach Clinic for "[p]ain involving [his] face." R. 733. The medical records note his "History Of Present Illness" included a stent, a hip replacement, iliofemoral bypass, and blood clot removal. R. 733. They also reflect that he was prescribed Percocet to be taken "every 4 hours as needed for pain, but do not take daily." R. 733. Mr. Terry reported "joint pain, limitation of motion, hip pain." R. 734. Mr. Terry appeared "well nourished, well developed, alert, oriented, in no acute distress." R. 734. The physical examination of Mr. Terry's left leg showed:

> **Inspection/Palpation** : *tenderness to palpation present, edema present,* no ecchymosis
> **Joint Stability** : *hip stability decreased*
> **Range of Motion** : range of motion restriction, hip crepitus present, elbow pain with motion present on the left and hip pain on the left

R. 736. The plan included the continued use of Percocet with no instructions to return to the clinic. R. 736.

Regarding the use of Percocet, Mr. Terry testified at his hearing:

> Q     What do you take?
> A     Percocet 10.
> Q     How long have you been doing that?
> A     Ever since I've been seeing Dr. Beach.
> Q     Okay. Now, has that helped with your pain?
> A     Yes, sir.
> Q     Well, let's say one to ten, on a scale, one being no pain, ten being a lot, where -- when you take your Percocet, where do you think you fall?
> A     About a five or six.
> Q     Okay. It takes the edge off a little bit. Does it eliminate it?
> A     Yes, sir. It's the only reason I'm able to sit here right now and not be hurt is because I took one before I came up here.

R. 73. Mr. Terry also testified that he sees the doctor every six weeks where his pain medication is refilled. R. 74. Additionally, at those periodic visits, his blood is checked to make sure he is compliant on his blood thinner and the "blood thinner's doing what it's supposed to." R. 74. Mr. Terry testified that he could stand for "[m]aybe five minutes" and could "lift probably 50 pounds" but would have trouble carrying that amount. R. 74–75. He testified he could lift and carry ten pounds comfortably. R. 75. Mr. Terry testified that he had a cane he tried "not to use." R. 75. He also testified that the aortic stent graft "helped" "[a]s far as mobility and being able to move [his] left leg more." R. 80.

Mr. Terry's Adult Function Report states:

> I cannot lift anything over 25 pounds one time or I could hurt my hip. I cannot squat, my left leg will not allow me to bend that way. I cannot stand for longer than 30 mins in the same spot. I cannot walk longer than 5 minutes. I

16

> cannot kneel at all due to my injury. I cannot climb stairs
> it is too painful.

R. 338.

Mr. Terry argues that his "symptoms from his left leg increased on August 4, 2023," and "Dr. Beach made positive physical examination findings on August 4, 2023." Doc. 11 at 15. Mr. Terry also argues that "Dr. Beach's history entries prior to March 30, 2023, are not much different than history entries made after March 30, 2023." *Id.* Mr. Terry argues that his "continued use of prescribed Percocet 10-325 mg. for pain" (a dose that was "never reduced . . . between March 30, 2023, and August 4, 2023") "counters the ALJ's medical improvement determination." *Id.* Finally, Mr. Terry argues that the ALJ could have sent him "for a consultative exam to determine what if any medical improvement [his] PVD had undergone and whether he had any increase in his RFC." *Id.* at 16.

The Commissioner argues that "the ALJ followed the appropriate multi-step evaluations in accordance with the regulations and reasonably determined that although [Mr. Terry] was disabled from January 28, 2022, through April 1, 2023, his condition improved as of April 2, 2023." Doc. 15 at 7. The Commissioner cites objective medical findings, routine visits, hearing testimony, and Mr. Terry's Adult Function Report to support the ALJ's decision. *Id.* at 8–9. The Commissioner argues that Mr. Terry's argument is "an improper request to reweigh the evidence, which should be rejected" and states that the ALJ has already considered the evidence

17

raised by Mr. Terry "when evaluating his claim." *Id.* at 9. Finally, with respect to

Mr. Terry's argument for a consultative examination, the Commissioner argues that

"[i]t is within the ALJ's discretion whether to purchase a consultative examination."

*Id.* at 10. But, "[h]ere, the evidence was sufficient to support a decision on [Mr.

Terry's] claim." *Id.*

The ALJ followed the appropriate steps to determine that a medical

improvement occurred. And substantial evidence supports the ALJ's finding that

there has been improvement in Mr. Terry's medical condition and residual functional

capacity as of April 2, 2023. As to Mr. Terry's argument, the ALJ specifically

acknowledged the August 4, 2023 visit, including the examination findings. R. 37.

It is not this court's duty to re-weigh the evidence. The ALJ thoroughly considered

the objective medical evidence from January 28, 2022 through April 1, 2023, R. 33–

34, as well as the evidence since April 1, 2023. R. 37–38. Although Mr. Terry argues

that the medical records "are not much different," Doc. 11 at 15, the ALJ highlighted

their differences in his decision. For example, during the period of disability, the

ALJ memorialized the medical procedures Mr. Terry underwent and that "he . . .

gradually improved over time" both after his left hip repair and after his

endovascular procedure. R. 34. The ALJ also noted that when Mr. Terry reported

severe left leg pain on January 23, 2023, he subsequently underwent a stent graft

procedure. R. 34.

The ALJ reviewed the objective medical evidence and hearing testimony regarding Percocet and concluded that the Percocet "controlled to a great extent" Mr. Terry's "ongoing subjective symptoms" "without adverse medicinal side effects." R. 38. Mr. Terry does not point to any evidence contrary to this assessment.

Although Mr. Terry argues that a consultative examination was necessary to "determine what if any medical improvement Mr. Terry's PVD had undergone and whether he had any increase in his [residual functional capacity]," Doc. 11 at 16, the ALJ's decision demonstrates otherwise. Mr. Terry has not identified any evidentiary gaps in the ALJ's decision. The record here was neither incomplete nor inadequate as it related to Mr. Terry's physical impairments. Instead, the record was sufficient for the ALJ to evaluate Mr. Terry's impairments and craft a residual functional capacity that incorporated his abilities. Substantial evidence supports the ALJ's consideration of Mr. Terry's impairments, and Mr. Terry has failed to establish that the ALJ had any obligation to further develop the record.

## B. The ALJ's Evaluation of Mr. Terry's Medical Opinion Evidence

The SSA has revised the applicable regulations related to medical opinion evidence. The SSA's new regulations, promulgated in 2017, do away with the hierarchy of medical opinions and the treating source rule. 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a). Under the new regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s)" for all claims filed on or after March 27, 2017. *Id*. And the ALJ "will articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions . . . in [the claimant's] case record." 20 C.F.R. § 404.1520c(b); 20 C.F.R. 416.920c(b).

When evaluating the persuasiveness of the opinions, the ALJ considers these factors: (1) supportability, i.e., how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)"; (2) consistency with the evidence; (3) relationship with the claimant, including the nature of the relationship, the length of the treatment relationship, the frequency of examinations, and the extent of the treatment relationship; (4) specialization; and (5) "[o]ther factors," such as the medical source's familiarity with the agency's policies and the evidence in the claim. 20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c). Supportability and consistency are the most important of the five factors, and an ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions . . . in [his] . . . decision." 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. 416.920c(b)(2). The ALJ may explain how he considered the remaining factors, but he is not required to do so. *Id.* The ALJ is not required to use "magic words" or follow a particular formula to articulate his consideration of the factors. *See* 20 C.F.R. § 404.1520c; 20

C.F.R. § 416.920c; *Thaxton v. Kijakazi*, No. 1:20-cv-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022).

Mr. Terry argues that the ALJ failed to accord proper weight to the opinion by Dr. Don E. Beach, Mr. Terry's treating physician. Doc. 11 at 17–24; *see also* R. 740–41.

On August 17, 2023, Dr. Beach filled out a two-page questionnaire at the request of Mr. Terry's attorney. R. 738–41. Dr. Beach was asked, "What objective medical evidence did you consider in diagnosing Mr. Terry with acute arterial insufficiency and/or peripheral vascular disease on July 27, 2022?" R. 740. Dr. Beach wrote: "lack of pedal pulses with intermittent claudication." R. 740. In response to the question, "Has Mr. Terry's acute arterial insufficiency and/or peripheral vascular disease improved with treatment?" Dr. Beach answered "partially." R. 740. Dr. Beach affirmed that Mr. Terry was compliant with his medication, that his cigarette smoking will have an effect on his acute arterial insufficiency and/or peripheral vascular disease, and that his alcohol use will have no effect on the same. R. 740. The next question asked, "In your medical opinion would Mr. Terry needing to elevate his left leg above his heart more than 3 times a day for more than 10 minutes be medically consistent with your diagnosis and treatment of his conditions?" R. 740. Dr. Beach responded: "it will only help minimally." R. 740. Dr. Beach next affirmed that Mr. Terry's report of "not being

able to stand for more than 30 minutes in one place or walk more than 5 minutes at a time" is "medically consistent with [Dr. Beach's] diagnosis and treatment of [Mr. Terry's] conditions." R. 741. Finally, Dr. Beach was asked "What objective signs prove the medical necessity to treat Mr. Terry's left hip and leg pain with prescription medication of Percocet 10-325 mg every 4 hours as needed for pain?" R. 741. He responded: "abn. ABI and abn. CTA showing his claudication is from limb threatening PVD. He also has osseous abnormalities on xray of the L lower limb." R. 741.

The ALJ considered Dr. Beach's medical opinion and discussed it in his residual functional capacity findings as follows:

> The opinion of Donald Beach, M. D., the claimant's primary care provider, dated August 17, 2023 that he needs to sit in a recliner with his legs elevated above his heart and a pillow under his left leg more than three times a day for ten minutes at a time and cannot stand more than thirty minutes or walk more than five minutes at once is not persuasive or accepted since he only answered a series of question[s] and did not reference any of his medical records documenting his need for the same, he did not complete an appropriate vocational assessment of his ability to function, and because it is inconsistent with his own objective medical findings, observations and reports after April 1, 2023.

R. 39.

*First*, Mr. Terry argues that "Dr. Beach's medical opinion is persuasive and should have been accepted because he answered a series of questions and referred to his medical records documenting his opinion of Mr. Terry's physical limitations."

22

Doc. 11 at 19 (emphasis omitted). *Second*, Mr. Terry argues that "[i]t was unnecessary for Dr. Beach to complete an appropriate vocational assessment of Mr. Terry's ability to function." *Id.* at 20 (emphasis omitted). *Third*, Mr. Terry argues that "Dr. Beach's medical opinion is not inconsistent with his own objective medical findings, observations, and reports after April 1, 2023." *Id.* at 21 (emphasis omitted). The Commissioner responds that "the ALJ's analysis of Dr. Beach's opinion comports with the governing regulations and enjoys substantial evidentiary support." Doc. 15 at 11.

As an initial matter, the ALJ "considered th[is] medical opinion[] . . . in accordance with the requirements of 20 CFR 404.1520c and 416.920c." R. 37. The ALJ articulated how persuasive he found the opinion, as required by the regulations. R. 39 ("The opinion of Donald Beach, M. D. . . . is not persuasive. . . ."); *see* 20 C.F.R. § 404.1520c(b), 20 C.F.R. § 416.920c(b).

The ALJ applied the correct legal standards in evaluating Dr. Beach's opinion, and substantial evidence supports his finding that it was "not persuasive" because it "did not reference any of his medical records," "he did not complete an appropriate vocational assessment of his ability to function," and "it is inconsistent with his own objective medical findings, observations and reports after April 1, 2023." *See* R. 39. Thus, the ALJ explained how he considered the supportability and consistency factors. Before the ALJ made this finding with respect to Dr. Beach's opinion, the

ALJ detailed Mr. Terry's history of left hip and leg problems. R. 34–35. In this section of his decision, the ALJ specifically referenced Dr. Beach's medical treatment notes from the "postsurgical treatment for his left hip and leg problems." R. 34. Additionally, the ALJ specifically discussed Mr. Terry's visits to the Beach Clinic on March 30, 2023, May 12, 2023, and August 4, 2023 as well as "routine periodic medication management therapy for his hip and left leg problems." R. 34, 37.

Under the new regulations, the ALJ adequately accounted for his finding regarding Dr. Beach's medical opinion. The ALJ's decision reflects that he considered Dr. Beach's treatment notes and findings in his analysis. R. 34, 37. As noted by the ALJ, Dr. Beach's medical opinion "did not reference any of his medical records documenting" Mr. Terry's need to sit with his leg reclined. R. 39, 740. Instead, Dr. Beach wrote "it will only help minimally." R. 740. Although Dr. Beach affirmed that Mr. Terry's allegations of standing and walking limitations are "medically consistent with [his] diagnosis and treatment of his conditions," he again did not reference medical records nor did he "complete an appropriate vocational assessment." R. 39, 741. Additionally, Dr. Beach's medical opinion was also inconsistent from his own records after April 2, 2023. *See* R. 37. Therefore, Dr. Beach's opinion was neither supported nor consistent pursuant to the regulations.

The ALJ applied the correct legal standards in evaluating Dr. Beach's opinion, and substantial evidence supports his finding that it was not persuasive. Mr. Terry has not shown that the ALJ erred in his consideration of the medical opinion evidence.

## C. The ALJ's Evaluation of Mr. Terry's Subjective Complaints

A claimant's subjective complaints are insufficient to establish a disability. *See* 20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.929(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a claimant claims disability due to pain or other subjective symptoms. The claimant must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 404.1529(a), (b); 20 C.F.R. § 416.929(a), (b); Social Security Ruling 16-3p, 2017 WL 5180304, at *3–*4 (Oct. 25, 2017) ("SSR 16-3p"); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of a claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. § 404.1529(c); 20 C.F.R. § 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which a claimant's symptoms affect his capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a claimant's symptoms, (3) the claimant's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the claimant takes to relieve symptoms, and (8) any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. § 404.1529(c)(3), (4); 20 C.F.R. § 416.929(c)(3), (4); SSR 16-3p at *4, *7–*8. To discredit a claimant's statements, the ALJ must clearly "articulate explicit and adequate reasons." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

An ALJ's review "must take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). There is no rigid requirement that the ALJ specifically refer to every piece of evidence in her decision. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016). Instead, the ALJ must consider the medical evidence as a whole and not broadly reject the evidence in the record. *Id.*

This determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). The Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. *See Ortega v. Chater*, 933 F. Supp. 1071, 1076 (S.D. Fla. 1996) (holding that the ALJ's failure to articulate adequate reasons for only partially crediting the plaintiff's complaints of pain resulted in reversal). "The question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Mr. Terry makes two arguments regarding the ALJ's determination of his residual functional capacity. *First*, Mr. Terry argues that the ALJ erred in basing his "determination on Mr. Terry's activities of daily living." Doc. 11 at 25 (emphasis omitted). *Second*, Mr. Terry argues that the ALJ erred in basing his "determination on Mr. Terry's work history reports and earnings records to determine that he had an inclination to remain out of the workforce since April 2, 2023." *Id.* at 26

(emphasis omitted). The Commissioner argues that "[t]he ALJ provided . . . proper reasons for discounting subjective complaints and then discussed the evidence that supported his findings, as well as other evidence that was inconsistent with [Mr. Terry's] subjective complaints." Doc. 15 at 20.

It is clear the ALJ applied the Eleventh Circuit's pain standard. After explaining the pain standard, with citations to 20 C.F.R. § 404.1529, 20 C.F.R. § 416.929, and SSR 16-3p, the ALJ considered Mr. Terry's testimony about his symptoms. *See* R. 37. With respect to Mr. Terry's hearing testimony, the ALJ summarized it as follows:

> The claimant alleges he has continued to suffer from disabling hip and left leg problems since his disability ended on April 1, 2023. The claimant alleges [he] has continued to suffer from chronic severe stiffness and pain in his hips and left leg that has seriously limited his ability to lift, sit, stand, walk, bend, squat, kneel and climb since then, and prevented him from working in any capacity since that date as well.

R. 37.

"After considering the evidence of record," the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to produce his alleged symptoms." R. 37. The ALJ then found that Mr. Terry's "statements concerning the intensity, persistence and limiting effects of these symptoms after April 1, 202[3] are not entirely consistent with the medical evidence and other evidence in the record." R. 37. The ALJ stated that "the objective medical evidence

28

simply does not document the severe and disabling ongoing subjective symptoms the claimant alleges he suffers from because of his physical problems since his disability ended on April 2, 2023." R. 38. The ALJ continued: "Instead, it indicates they are controlled to a great extent by the claimant's medications without adverse medicinal side effects." R. 38. Therefore, the ALJ found that "the objective medical evidence and the claimant's course of treatment are inconsistent with his subjective allegations of ongoing disabling physical problems as of [April 2, 2023] and thereafter and are consistent with his residual functional capacity assessment outlined [in the decision]." R. 38.

The ALJ limited Mr. Terry to light work with additional limitations. R. 36–37. He summarized that Mr. Terry's "residual functional capacity assessment outlined above is supported by and is consistent with the objective medical evidence in the record, and his level of daily activity." R. 39.

The ALJ properly evaluated Mr. Terry's symptoms consistent with the Eleventh Circuit's pain standard and his decision was supported by substantial evidence. After discussing Mr. Terry's testimony, R. 37, the ALJ summarized the medical evidence, R. 37–38. The medical evidence cited by the ALJ – generally unremarkable findings, no hospitalizations during the relevant period, and routine and conservative treatment – supports the ALJ's finding that Mr. Terry's allegations of disabling limitations were not fully consistent with the evidence. *See supra*

Section IV.A (reviewing medical records post-April 2, 2023). The ALJ also discussed the use of medication without adverse side effects to control Mr. Terry's symptoms.

The ALJ acknowledged Mr. Terry's medical history and testimony and accounted for Mr. Terry's subjective complaints when he determined Mr. Terry was limited to light work with additional limitations. R. 36–37. Although the ALJ also discussed Mr. Terry's activities of daily living and work history, R. 38, this consideration is specifically provided for by the regulations. The ALJ's consideration of these factors was not selective, and, instead, the ALJ's decision demonstrates he considered the evidence as a whole. Accordingly, there is no error in the ALJ's consideration of Mr. Terry's subjective complaints.

## V.    Conclusion

Upon review of the administrative record, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** this 22nd day of September, 2025.



ANNA M. MANASCO
UNITED STATES DISTRICT JUDGE